IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| INES CRUZ OQUENDO, RAMON QUIÑONES for themselves and on behalf of their Conjugal Partnership,<br><br>**Plaintiffs,**<br><br>v.<br><br>DR. JOAQUIN F. BALAGUER PADILLA, his wife Jane Roe and their Conjugal Partnership; DOCTOR'S CENTER HOSPITAL, INC.; DOCTOR'S CENTER HOSPITAL MANATI;, JOHN DOE; RICHARD DOE; ABC and DEF INSURANCE COMPANIES,<br><br>**Defendants.** | CIVIL NUM.: 18-1039<br><br><br><br><br><br>MEDICAL MALPRACTICE |

## **COMPLAINT**

**TO THE HONORABLE COURT:**

Come now the plaintiffs, through the undersigned attorneys, and as their complaint against defendants respectfully allege and pray as follows:

### **I.     THE PARTIES**

1. Plaintiff Mrs. Inés Cruz-Oquendo ("Mrs. Cruz") is an eighty-one (81) years old woman, married to co-plaintiff Mr. Ramón Quiñones ("Mr. Quiñones"), and resident of the State of Florida, United States of America. Her current address and phone number are: 78 Lake Point Circle, Kissimmee, Fla., USA; 407-577-7538.

2. Plaintiff Mr. Ramón Quiñones is a ninety (90) years old man, married to co-plaintiff Mrs. Inés Cruz-Oquendo, and resident of the State of Florida, United States of America. His current address and phone number are: 78 Lake Point Circle, Kissimmee, Fla., USA; 787-643-2776.

3. Upon information and belief, codefendant Dr. Joaquín F. Balaguer-Padilla ("Dr. Joaquín Balaguer" or "Dr. Balaguer") is a practicing podiatric physician and is married to codefendant Jane Roe (identified as such since her true identity is unknown to the plaintiffs at present) and together they constitute a Conjugal Partnership. Dr. Balaguer and his wife Jane Roe are both of legal age and residents of Puerto Rico. Also, Dr. Balaguer has two professional offices in Puerto Rico, one in Bayamón and the other in Manatí.

4. Upon information and belief, codefendant Doctor's Center Hospital, Inc. is a corporation organized under the laws of the Commonwealth of Puerto Rico and has its principal office and place of business in Manatí, Puerto Rico, which is within the jurisdiction of this Honorable Court.

5. Upon information and belief, codefendant Doctor's Center Hospital Manatí is a "doing business as" ("DBA") of codefendant Doctor's Center Hospital, Inc.

6. John Doe and Richard Doe are residents, or entities, of Puerto Rico who have or may have contributed to the damages claimed in this Complaint, designated under fictitious names because their correct names are unknown at present.

7. Codefendants ABC and DEF Insurance Companies, designated under assumed names because their correct names are unknown at present, are insurance carriers organized and operating under the laws of Puerto Rico, with their principal places of business in said jurisdiction.

8. At all relevant times herein, ABC and DEF Insurance Companies had, in full force and effect, insurance policies covering the liability of co-defendants for the acts and omissions that gave rise to this case.

## II.         JURISDICTION AND VENUE

9. This Honorable Court has jurisdiction over the subject matter in the captioned case pursuant to 28 U.S.C. § 1332 inasmuch as the controversy involves citizens from different states and the amount in controversy exceeds seventy-five thousand dollars ($75,000.00), exclusive of costs and interests. Plaintiffs invoke the application of Puerto Rico law, including Articles 1802 and 1803 of the Puerto Rico Civil Code, 31 L.P.R.A. §§ 5141 and 5142, to the present controversy.

10. Venue lies properly in the United States District Court for the District of Puerto Rico, since the facts alleged in the Complaint occurred in Puerto Rico and the controversy is between citizens and corporations of the Commonwealth of Puerto Rico and two citizens of the State of Florida.

## III.         THE FACTS

11. On September 14, 2016 defendant Dr. Joaquín Balaguer became plaintiff Inés Cruz-Oquendo's treating physician with regard to her complaints of pain in her left foot.

12. As stated in her Doctor's Center Hospital, Inc. and/or Doctor's Center Hospital Manatí's (collectively the "Doctor's Center" or the "Hospital") medical record number 260902, Mrs. Cruz's conditions were diagnosed by Dr. Balaguer as: "Hallux Abducto Valgus Left Foot" and "Second Hammer Toe with Metatarsal Phalangeal Joint Dislocation Left Foot."

13. Among other things, and according to Mrs. Cruz's medical record with Dr. Balaguer identified as Account No. M26977, Dr. Balaguer suggested to Mrs. Cruz the following surgical procedures for her conditions: (a) "Lapidus Arthrodesis/Mc Bride Bunionectomy left foot"; along with (b) "second toe Arthrodesis/ second MPJ

[Metatarsal Phalangeal Joint] Capsulotomy left foot." Those surgical procedures were scheduled to be performed by Dr. Balaguer on Mrs. Cruz on January 27, 2017.

14. Following the instructions received from Dr. Balaguer on January 9, 2017, and also later from an internist and/or a nurse that were at the time or still are at present employees of Doctor's Center and who performed the preoperative orientation on January 10, 2017, Mrs. Cruz discontinued the intake of anticoagulant medications as indicated seven (7) days before the surgery.

15. On January 27, 2017, the day of the surgery, a document titled "Cotejo de Seguridad 'Time Out'" was completed with clear indications of the correct place marked for the surgical procedure, including a drawing of a human body with the left foot marked by Mrs. Cruz with a circle and her initials. That document was also signed by personnel from the Doctor's Center, including a Registered Nurse named Laura Crespo-Villalobos who also acted as a member of the "Operative Staff" during Mrs. Cruz's operation in the capacity of "Circulator".

16. Notwithstanding the fact that it was clear to Dr. Balaguer and to the Doctor's Center's personnel that they had to operate on Mrs. Cruz's left foot, on January 27, 2017 Dr. Balaguer started the surgical procedure on the wrong foot and, instead, made an incision on Mrs. Cruz's right foot.

17. On that same date, January 27, 2017, defendant Dr. Joaquín Balaguer also performed the Mc Bride Bunionectomy surgical procedure on Mrs. Cruz's left foot ("the surgery") at the facilities owned and operated by Doctor's Center.

18. With regard to the negligent incision made by Dr. Balaguer on Mrs. Cruz's right foot, and according to Dr. Balaguer's own representation as stated in the Hospital's "Operation Report", an "[e]rroneous incision was made from medial cuneiform to 1st

4

MPJ on right foot as OR personnel had mistakenly prepared and scrubbed the right foot." Simply put, although as her treating physician Dr. Balaguer knew beforehand that he had to operate Mrs. Cruz's left foot, he first made an incision on her right foot because the personnel of codefendant's Doctor's Center "mistakenly prepared and scrubbed the right foot to be operated" instead of the left foot.

19. That is, Dr. Balaguer stated that his negligence was predicated upon the additional negligence of the employee of codefendant Doctor's Center that "prepared and scrubbed" for operation Mrs. Cruz's right foot, even though it was clear for both Dr. Balaguer and the Hospital that the operation had to be on Mrs. Cruz's left foot.

20. According to Mrs. Cruz's medical record at the Hospital, the Doctor's Center's employee in charge of the preparation and scrubbing of Mrs. Cruz's left foot was one "OR Technician-TSO" named Ms. Marilyn Córdova-Santiago. At the time the operation began, Ms. Córdova-Santiago was acting as a member of the "Operative Staff" in her capacity as "Scrub". Therefore, upon information and belief, the Hospital's employee that negligently "prepared and scrubbed" for operation Mrs. Cruz's right foot was Ms. Córdova-Santiago.

21. Even though Dr. Balaguer realized at some point that he had opened the wrong foot, because he knew beforehand that he was supposed to operate Mrs. Cruz's left foot and not the right foot, he did not stop the surgery but instead continued and performed the surgical procedure on Mrs. Cruz's left foot, leaving her with several sutures on both feet and completely unable to walk.

22. Mrs. Cruz's medical records indicate that the procedure to correct the second hammer dislocated toe in her left foot, as described in paragraphs 12 and 13, "was aborted" due to an "uncontrolled bleeding". That is, Dr. Balaguer did not perform the

5

procedure to correct the dislocated toe. Therefore, Mrs. Cruz needs to have another surgery to correct her dislocated toe which causes discomfort. However, due to the horrible experience she had with the surgery performed by Dr. Balaguer and personnel from Doctor's Center, Mrs. Cruz is afraid to undergo another surgery on her feet.

23. After the surgery, Mrs. Cruz's feet were both stitched and wrapped.

24. Mrs. Cruz was released from the Hospital the same day of the surgery, even though she told Dr. Balaguer and the Hospital that she was suffering from severe pain in her feet.

25. Neither Dr. Balaguer nor the Hospital made any arrangements to help Mrs. Cruz get to her home, even though they knew that Mrs. Cruz could not walk. Therefore, Mrs. Cruz's relatives made arrangements for an ambulance to transport her to her home.

26. For an initial period of two weeks, Mrs. Cruz was not able at all to fulfill any of her basic needs, such as using the bathroom or taking a shower by herself. During that initial period she depended on her husband, Mr. Ramón Quiñones, her son, Mr. Pedro Quiñones-Cruz, and her niece, Ms. Laudel Navedo-Quiñones, to do everything she had to do while bedridden.

27. For approximately two months, Mrs. Cruz's life and routine were disrupted and affected by not being able to get out of her house due to the medical injuries inflicted by Dr. Balaguer's and the Hospital's negligence and incompetence.

28. Due to defendants' negligence, Mrs. Cruz suffered pain and inflammation on her right foot for approximately two months.

29. Following Dr. Balaguer's instruction, after the operation Mrs. Cruz could not put any weight on the left foot which impeded Mrs. Cruz from walking for more than three

6

months. Although Dr. Balaguer knew that Mrs. Cruz was not going to be able to put any weight on her left foot after the operation, and that she was going to have to rely on her right foot to be able to ambulate, Dr. Balaguer proceeded to operate Mrs. Cruz's left foot notwithstanding the fact that he incorrectly and negligently opened first Mrs. Cruz's right foot.

30. Due to defendants' negligence, Mrs. Cruz was not able to walk at all for more than three months because she could not place weight neither on her left or right foot. Nevertheless, for Mrs. Cruz to move herself from her bed to the wheelchair she had to transfer her weight to the right foot and, after two weeks from the operation, her back pain increased because, as it was very painful to affirm with her right foot, she had to put additional stress and pressure on her back to alleviate the pain on her foot.

31. When Mrs. Cruz was finally able to walk with the assistance of a cane, her back pain increased again significantly, since she had to make an extreme effort to manage the cane and avoid putting excessive pressure on both the left and right foot to be able to walk.

32. The scar on Mrs. Cruz's right foot is acutely visible and unsightly.

33. For about two months, Mrs. Cruz had difficulty managing her toilet protocol as she was unable to reach the bathroom on time due to her severe mobility impairment.

34. Co-plaintiff Ramón Quiñones, who has been married to Mrs. Cruz for sixty-four (64) years, has suffered emotional distress as a consequence of seeing his wife's physical and emotional agony caused by defendants' negligence.

35. Mr. Quiñones' daily routine was also severely affected by Mrs. Cruz's sufferings and limitations caused by defendants' negligence. His regular activities, such as visits to his family, attending church and Bible lessons, doing the household chores, and

running errands, were constantly interrupted because he had to take care of Mrs. Cruz as she couldn't be by herself.

36. For two months, Mr. Quiñones and Mrs. Cruz, who are devoted religious persons, could not attend church or visit friends and families, adding to their emotional distress.

37. Mr. Pedro Quiñones-Cruz's (hereinafter referred to as "Plaintiffs' son") life and routine were disrupted and affected by the medical injuries inflicted upon his mother by Dr. Balaguer's and Doctor's Center's negligence and incompetence. Plaintiffs' son had to take vacation time to stay with his parents for two weeks during the end of January and the beginning of February 2017, to help Mr. Quiñones sustain, carry and take care of Mrs. Cruz. After those two weeks, Plaintiffs' son had to return to his job in Colorado, a situation that caused him emotional distress. Seeing their son in that situation, aggravated Mrs. Cruz and Mr. Quiñones' suffering.

38. Although Mrs. Cruz filed an internal claim with the Hospital, she had to wait for about a month to receive an answer to that claim. In a letter dated February 28, 2017, the Hospital just stated that the findings of facts were discussed in a meeting with the faculty, employees were interviewed, and disciplinary action was taken.

39. On January 30, 2017, when Plaintiffs' son accompanied his mother during Mrs. Cruz's first visit after the surgery to Dr. Balaguer in his office, Dr. Balaguer voluntarily brought up the subject of the erroneous incision made on Mrs. Cruz's right foot and explained that it was difficult to notice everything after performing many surgeries on the same day and that he simply didn't notice anything was wrong until after he realized that he had opened the right foot instead of the left foot. When Plaintiffs' son expressed his dissatisfaction with Dr. Balaguer's explanation and

mentioned that that kind of errors needed to be compensated, Dr. Balaguer told him the following: "go ahead and sue me".

### IV.   PLAINTIFFS' DAMAGES

40.   As a direct result of codefendants' negligent acts and omissions, and departure from professional and accepted medical standards and practices, plaintiff Inés Cruz-Oquendo has suffered injuries including, but not limited to, a permanent scar on her right foot, severe pain, limited mobility, extreme emotional distress and mental anguish. The damages suffered by Mrs. Cruz due to defendants' negligent acts and omissions are valued at not less than three hundred thousand dollars ($300,000.00).

41.   As a direct result of codefendants' negligent acts and omissions and departure from good and accepted medical standards and practice, plaintiff Ramón Quiñones has suffered serious emotional distress and mental anguish as consequence of seeing his wife's physical and emotional agony caused by defendants' negligence, damages that are valued at not less than one hundred thousand dollars ($100,000.00).

### V.   JURY TRIAL DEMANDED

42.   Plaintiffs demand a jury trial on all issues raised in this Complaint.

**WHEREFORE,** it is respectfully requested that this Honorable Court enter judgment for the plaintiffs and against the defendants in the amounts requested in this Complaint, with imposition of interests, costs and attorneys' fees in favor of the plaintiffs.

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico, on this 23rd day of January, 2018.

s/ Ricardo L. Ortiz-Colón
**Ricardo L. Ortiz-Colón, Esq.**
USDC-PR No. 205510

        Attorney for the Plaintiffs
        PO Box 195236
        San Juan, Puerto Rico 00919-5236
        Tel.: (787) 379-8900
        E-mails: rortiz@rloclaw.onmicrosoft.com
                ortizcolonricardo@gmail.com

s/ María I. Santos-Rivera
**María I. Santos-Rivera, Esq.**
USDC-PR No. 213708
Attorney for the Plaintiffs
P.O. Box 2732
Guaynabo, Puerto Rico 00970
Tel.: (787) 568-4914
E-mail: m.santos.rivera@gmail.com

10